July, 1830.

Ex'r of Simmons
v.
Vandegrift
et al.

---

WILSON v. HILLYER and DUNN.

A witness, who may be responsible as an endorser on one or more of several notes, is a competent witness between two other endorsers of the same notes, against whom judgments had been obtained, and their respective properties sold, subject to redemption; as to the terms of a subsequent agreement between them, concerning the re-sale of the property: his responsibility as an endorser does not create an interest in the event of that suit.

When there is nothing in the suit to change the liability of the witness; or when the change, if any, is only in the person to whom the witness is answerable, and his responsibility, in all events of the cause, is equal; the witness is not disqualified.

The declaration of one party, in the absence of the other, after an agreement made, touching the terms of that agreement, is not competent evidence for the party making the declaration.

It is not sufficient for a defendant, claiming to be a bona fide purchaser for valuable consideration without notice, to deny personal knowledge of the matters charged, without denying notice, before his contract. He must deny notice, even though it be not charged; and he must deny it positively, and not evasively; he must even deny fully, and in the most precise terms, every circumstance from which notice could be inferred.

JAMES Wilson, the complainant, in his bill, states, that he became indebted to the State Bank at New-Brunswick, and other banks, to a large amount, as endorser for one Joseph Demund. That Demund having failed to pay the notes, judgment was ob-

tained against the complainant by the bank; and execution being issued, his property, including a farm in the county of Warren, was sold.   The bank became the purchaser, and received a deed from the sheriff.   That the president of the bank, who attended the sale and bid off the farm, told the complainant he might remain in possession, and if he could find a purchaser for a larger sum than was due to the bank, he should have the excess, or might redeem by paying to the bank their amount.   That the complainant remained in possession about two years, when William Hillyer, one of the defendants, proposed to purchase the farm, " and agreed and promised the complainant, and the said " president and directors, that upon a deed being given to him for " the property, he would pay and satisfy the amount of the judg- " ment against the complainant, and he would pay the complain- " ant, in addition thereto, the sum of one thousand dollars : upon " which terms the complainant agreed the farm might be con- " veyed to him."   That Hillyer has not paid, and now refuses to pay, the thousand dollars, which was to have been paid at the delivery of the possession of the premises to him.   That Hillyer has since conveyed the farm to Jacob Dunn, the other defendant; who is seeking, by action of ejectment, to recover it from the complainant.   And that Dunn, before his purchase, knew of the aforesaid agreement to pay the said sum of money to the complainant.   The bill seeks to recover the thousand dollars, and prays for an injunction, &c.

The defendants filed separate answers.   Hillyer, in his answer, admits the endorsements of the complainant, and the judgment, and execution, and sale of the complainant's property ; and states that he was also an endorser for Demund, and his farm was sold under like circumstances, and at the same time, and also purchased by and conveyed to the bank.   He states, he believes it to be true that they (the bank) permitted the said complainant to remain in possession of the said property that he formerly owned, and authorized him to contract to sell the same, and agreed to give him the surplus after satisfying their demand ; and that the said bank made the same terms with him (Hillyer.)   That after some time, and after the complainant had refused to make exertion to raise money to pay his proportion of the debt to the

bank, he disposed of his farm for four thousand dollars, and articled with the bank for the complainant's farm, in consideration of paying to them the balance that would be due to them after the said four thousand dollars. That after he returned from New-Brunswick, he informed the complainant what he had done; and it was agreed that the complainant should occupy the premises one year, paying rent, and at the end of the year give to the defendant peaceable possession, and a quit claim, executed by himself and wife, so as to bar her dower; and the defendant to pay the complainant four hundred dollars. That at the end of the year he went to the complainant's house, in order to pay him according to the contract, and to receive from him the conveyance; when the complainant refused unless the defendant would pay him one thousand dollars, which he refused. And the defendant denies "that there was any agreement between him and the complainant, for the payment of the sum of one thousand dollars to "him, the said Wilson, or that there was any such agreement "made by this defendant with the officers of the bank, for the "benefit of the complainant."

The answer of the other defendant, Dunn, will be particularly adverted to hereafter.

Upon the filing of these answers, the injunction which had issued on the filing of the bill was dissolved, because the whole equity of the bill was denied.

Depositions were taken, and the cause set down for hearing. The Chancellor having been of counsel with one of the parties, Charles Ewing, Esquire, Chief Justice, was called on to hear the case, and advise the Chancellor. The cause was submitted on written arguments.

*Chetwood*, solicitor of complainant: *Southard*, of counsel.

————, counsel for the defendants.

The Chief Justice reported his opinion, which at this term was delivered by

THE CHANCELLOR. The first subject of enquiry from the evidence, is, upon what terms Hillyer purchased of the bank the

July, 1830.

Wilson
v.
Hillyer and
Dunn.

9

farm which had formerly belonged to Wilson: or, in other words, whether Hillyer did undertake to pay the sum of one thousand dollars to Wilson, as part of the consideration of the conveyance of the farm to him by the bank, and of the surrender to him of the possession by Wilson.

The farms of both Hillyer and Wilson were purchased by the bank for prices far less than their real value. The bank very honourably assured them, that whenever the farms could be again sold, they should reap the benefit of whatever might be obtained beyond the amount due to the bank. Hillyer contracted with Egbert for the sale of his farm for four thousand dollars; which, from all that appears or is said, I presume we may take to have been at that time its fair price. Hillyer contracted for the purchase, also, of the other farm. Thus far there is no dispute. But the terms of this contract are represented in a widely different manner by the parties, in their bill and answer. Hillyer, while he peremptorily denies that there was any agreement between him and Wilson for the payment to the latter of the sum of one thousand dollars, or that there was any such agreement made by him with the officers of the bank for the benefit of Wilson, after stating, that upon the sale, the bank permitted Wilson to remain in possession, and authorized him to contract to sell the farm, and agreed to give him the surplus after satisfying their demand, admits that before the conveyance by the bank to him, there was an agreement made between him and Wilson, whereby Wilson was to occupy the premises for one year, paying rent, and then to give Hillyer peaceable possession, and a quit claim executed by himself and wife, so as to bar her dower ; and Hillyer was to pay Wilson thereupon the sum of *four hundred dollars*. The denial of the answer of Hillyer, is therefore to be taken to extend rather to the terms of the agreement, or the amount to be paid as alleged in the bill, than to the fact of the making of an agreement, or an engagement to make a payment to Wilson on account of the farm ; for the latter he expressly avows.

Independent however of any aid from the answer, and in opposition to all the weight to which, on the doctrine of the court of chancery, it would be entitled, if it contained a full and unequivocal denial, the evidence of the complainant satisfactorily shows an engagement on the part of Hillyer to pay Wilson the sum of

one thousand dollars; that this payment was part of the price or purchase money of the farm; and that the promise of Hillyer to make the payment was founded upon a sufficient and legal consideration. The testimony of the president and cashier of the bank, and of two other witnesses, is express to this point. Daniel W. Disborough, the cashier, says, " The bank afterwards sold the " farm of Wilson to Hillyer. The terms of sale were, that Hillyer " was to pay Wilson one thousand dollars, upon Wilson's wife's " relinquishing her right of dower, over and above the lien of the " bank. Egbert was to pay four thousand dollars to the bank for " Hillyer's farm, and Hillyer was to pay the bank their balance, " supposed to be fifteen or sixteen hundred dollars, and to pay Wil- " son the sum of one thousand dollars. The contract was enter- " ed into in the presence of the deponent. The sum of one thou- " sand dollars was to be paid when Mrs. Wilson released her right " of dower, and Mr. Wilson his possession." Charles Smith, the president of the bank, testified, " that upon a meeting of the par- " ties at the bank, (in the spring of 1822,) he mentioned particu- " larly in the presence of all the gentlemen there, Hillyer among " them, that Hillyer was to pay Wilson one thousand dollars over " and above all his covenants and engagements to the bank ; to " which Hillyer assented ; and it was the express understanding " of the parties at the time ; and in consequence of these express " declarations, Wilson consented that the deed should be made " out, and it was made accordingly to Egbert and Hillyer ; to " Egbert a deed for one farm, and to Hillyer for Wilson's. The " thousand dollars was to be paid the next spring, at the usual " time of leasing farms, and upon that sum being paid, Wilson " was to give it up." Robert Thompson was also examined as a witness. To his testimony an exception was made at the examination, on the part of the defendant. It has not been insisted upon in the brief of his counsel, nor do I see any support for it. Responsibility as an endorser, if it exists, will not create an interest in the event of this cause; and although the facts respecting it are so darkly exhibited as to render reasoning on the subject difficult, it seems probable there is nothing to change his liability, or that any change which may occur, or has occurred, is only in the person to whom he may be answerable. If his responsibility in all events of the cause is equal, he has no disqualifying interest.

Thompson testifies, in the first place, of an interview prior to the negociation with the bank for the purchase of the farm. He says, " Hillyer and Wilson called to see him. Hillyer informed him he " had spoken to Wilson upon the subject, and that he had agreed " with Wilson to pay him one thousand dollars." Thompson enquired of Wilson if that was so, and he said it was. " Hillyer " informed him he had agreed upon the sale of his farm to Egbert " for four thousand dollars, and mentioned the day on which they " were to meet in New-Brunswick to make the proposition to the " bank." Thompson went to New-Brunswick at the request of Hillyer. A meeting of the directors of the bank was called. At the request of Hillyer, and in his presence, Thompson made to them this proposition:—" He wished them to make a deed of " Hillyer's farm to Egbert, and Egbert would pay or secure to " them four thousand dollars; to make a deed of Wilson's farm " to Hillyer, and Hillyer would pay them five hundred dollars, " and secure the remainder by mortgage." The president then asked what Wilson would say to that. Thompson informed them that Hillyer had agreed to give to Wilson one thousand dollars, which Wilson had agreed to take, and in that case Wilson was willing that the bank should make to Hillyer a deed for his farm. The president said the proposal was a reasonable one, and the bank would agree to it. James Egbert, the person who purchased Hillyer's farm, called as a witness by the complainant, testified, that " he was present in March, 1822, when the agreement was " made with the bank. Hillyer then stated he was willing to pay " the thousand dollars to Wilson, provided they would convey the " farm to him. About the middle of April, the witness and " Hillyer came to New-Brunswick to fulfil the contract, and there " they met with Wilson. Before the deed was given, the witness " stated to Wilson that Hillyer had agreed to give him one thou- " sand dollars and clear him of the bank. The president of the " bank distinctly stated, in the presence of both Hillyer and Wil- " son, that Hillyer was to pay the thousand dollars to Wilson, " and Hillyer assented to it. The deeds were then made out and " executed."

Let us look farther into the case, to ascertain if there be any thing to overcome, or to render doubtful, the united and consistent testimony of four respectable witnesses. If there be, it

arises, 1st, from the article of agreement; or, 2d, from the testimony of James Vansyckel, a witness examined by the defendants; or, 3d, because Thompson was to pay part of the thousand dollars.

1. The article of agreement is between the bank and Egbert and Hillyer, for the sale and purchase of the two farms, and sets forth the terms, so far as the bank was concerned, but is totally silent as to any payment to be made by Hillyer to Wilson. The scrivener by whom it was drawn, may have supposed, as it was between the bank on the one part, and Hillyer and Egbert on the other, it was enough to state the payments to be made to the bank; and that as Wilson was not a party, mention of the payment to be made to him was unimportant; or some other reason may have existed; about all which it is useless to indulge in conjecture, since the fact is certain, and must therefore be followed by its legitimate consequences, that there is nothing said in it of any payment to be made to Wilson. Some of its contents may be, perhaps, as difficult to explain as its omissions; such as the introduction into the instrument of Thompson as a party, which, according to one of the witnesses, the scrivener who drew it could not afterwards account for, or why, having been introduced, he was not called on to execute it. There is, however, nothing in the article inconsistent with the alleged engagement of Hillyer to Wilson; and the mere silence of the article cannot serve to disprove a fact to which four witnesses have unitedly testified. Wilson, who was not only not a party to the article, but not even present at its execution, cannot be prejudiced by the omission. And if the omission cannot prevail to disprove the existence of such a promise on the part of Hillyer, it cannot otherwise avail, since the promise was binding, especially as the conveyance of the farm was completed and delivered to him.

2. The testimony of Vansyckel shows a negociation between Hillyer and Wilson, but no actual agreement. Terms were in some degree discussed. It seems to have been the inception of the negociation; was merely a proposition on the part of Hillyer, no determination being made by Wilson; which, on the contrary, was expressly postponed in order that Wilson—who said it was new to him, he had not thought of it, and did not know what

to say—might reflect upon it and consult his friends. This testimony may serve to render it probable that an agreement was made, and that Hillyer did engage to pay money to Wilson on account of the purchase of the farm; but standing alone it certainly would not prove that any agreement was actually made, nor ought it to have any weight to show the terms of the agreement, in opposition to witnesses who testify that they had the agreement and its terms from the mouths of the parties.

3. I find nothing in the evidence to show, that by the agreement of the parties, six hundred dollars of the one thousand dollars was to have been paid by Thompson to Wilson. Hillyer makes no such allegation in his answer. No one of the four witnesses mention any such agreement, but on the contrary all explicitly state that the whole was to have been paid by Hillyer. The president, on cross-examination, to this point said, that "he knew " of no understanding that Mr. Thompson was to pay any part " of the money." Thompson says, that "when he spoke of any " sum that he considered himself bound to pay to Wilson, he had " no reference to the one thousand dollars which Hillyer was to " pay to Wilson, nor had he any intention that it should have " any thing to do with it." The cross-examination of James Egbert, if competent—which I am inclined to deny, because he relates a declaration of Hillyer, in the absence of Wilson, and after the agreement was made, if ever made—by no means serves to show that the original agreement was different from what is represented by Egbert himself and the other witnesses; nor that Thompson, by the original agreement, was responsible for any part of the thousand dollars; nor that Hillyer was responsible for any less than that sum. It serves to show, from Hillyer's own words, that there was an agreement for one thousand dollars. It shows something more; for it is scarcely credible that Hillyer could have used the language imputed to him, if by the terms of the original agreement he was, as he alleges in his answer, to pay but four hundred dollars. If his agreement extended to that sum only, how could he say "he would have but four hundred dollars of the thousand dollars to pay, for that," or in other words, because, " six hundred dollars was to be paid by Thompson." Whether that sum was to have been paid by Thompson, or any body, or

nobody, could have had no effect on his engagement, if it was for four hundred dollars only. The deposition of James Vansyckel shows no undertaking on the part of Thompson to pay any part of the thousand dollars ; nor does it show any agreement between Hillyer and Wilson, that Wilson should trust to Thompson for any part of the consideration money of the purchase which Hillyer proposed to make.

From this view of the subject, I deem it unnecessary to inquire into the responsibility of Thompson as endorser ; and so deficient is the testimony in respect to the facts on which his liability, if any, depends, that it is most advisable to enter into no speculations on the subject.

Against William Hillyer, then, the evidence in the cause appears to me fully to establish the right of the complainant to relief.

If the engagement of Hillyer to pay the sum of one thousand dollars, as a part of the consideration money of the premises, is proved, it can be of little avail to enquire whether his bargain is an hard one or otherwise, since no fraud or imposition on him is alleged, and he must therefore fulfil his contract, and equity cannot relieve him against it or permit him to abandon it even if onerous. The result to which we are brought by the evidence as to the agreement, might indeed be more satisfactory, if upon an enquiry we should find that Hillyer has no reason to complain of his bargain. But the light from the evidence upon this matter is too glimmering and feeble to enable us even to grope our way. We have some proof, indeed, of the amount due from both to the bank ; but I find it impracticable to ascertain the amount of their respective responsibilities. Both, there is reason to believe, were not endorsers on all the notes ; and whether they were on any, or on which, joint endorsers, so as to be as between themselves equally liable ; or separate endorsers, so as to be answerable in the order of endorsement ; neither the allegations nor proofs do satisfactorily show. In the brief of the counsel of the defendants, it is said, that " in truth and equity the amount due from Wilson " was one thousand dollars more than the amount due from " Hillyer." It may be so, but I cannot find in the proof, support for the position. The counsel relies on what is said in Hillyer's

answer, to show that Wilson was the first endorser on one of the notes; but this allegation of the answer is not followed up by any proof; and if it be true that Hillyer was not, as Wilson was, an endorser on another note of one thousand dollars; yet of how many of the notes Hillyer may have been the first endorser, we have no proof. If they stood equally indebted to the bank, and " the interest which Wilson had in the farm that Hillyer bought " of the bank, was worth as much as the farm that Egbert " bought," as testified by Thompson, say four thousand dollars; then Hillyer, having satisfied to the bank, say five thousand seven hundred and seventy-five dollars, and having the Wilson farm, say four thousand dollars, would in fact have advanced but one thousand seven hundred and seventy-five dollars, and Wilson four thousand dollars; so that one thousand dollars paid by Hillyer to Wilson would not render their losses equal. It would, however, be of little profit to spend further time on this topic, as we are able to find support for conjecture only; and as a mere conjecture I would hazard the question, whether, if the bank recover any thing in the suit said to have been brought against Thompson, they will not hold it for the benefit of Hillyer, in case he should have discharged all the responsibilities of himself and Wilson to the bank?

Our next enquiry respects the case of Jacob Dunn. He is a purchaser of the farm from William Hillyer. He is charged in the bill with knowledge, before his purchase, of the agreement alleged by the complainant. In his answer he says, " he believes it " to be true that William Hillyer afterwards purchased the said " property of the said State Bank at New-Brunswick; but this " defendant has no knowledge of any contract on the part of the " said William Hillyer with the said James Wilson, to pay him " the sum of one thousand dollars, over and above the amount " paid to the bank, nor of any such agreement being made with " the bank for the benefit of the said James Wilson." The answer is not full and explicit, nor directly responsive to the charge. He evidently refers to, and intends to deny, personal knowledge of the contract or agreement. He does not deny notice of it before his purchase; and his allegation may be satisfied and be true, even with notice, if he had no such personal knowledge. The

rule in equity is thus laid down by Chancellor Kent:—"If a pur-
" chaser wishes to rest his claim on the fact of being an innocent
" bona fide purchaser, he must deny notice, even though it be not
" charged, and he must deny it positively and not evasively ; he
" must even deny fully, and in the most precise terms, every circum-
" stance from which notice could be inferred :" *Denning* v. *Smith,*
3 *John. Ch. Rep.* 345. Moreover, at the time of the purchase
by Dunn, Hillyer, from whom he bought, was not only out of
possession, but Wilson was claiming adversely, and an ejectment
had been previously instituted.

There is enough, then, in my opinion, in the case, to bring
Dunn also, as well as Hillyer, within the relief to which Wilson is
entitled.

What, in the next place, is the extent of that relief? It will ap-
pear from a succinct view of the rights of the respective parties.

1. The complainant is entitled to the sum of one thousand dol-
lars.

2. This sum of one thousand dollars should have been paid on
the 2d day of April, 1823. Doctor Smith, the president of the
bank, says, the one thousand dollars was " to be paid the next
" spring at the usual time of leasing farms." Hillyer, in his an-
swer, says, " Wilson continued to occupy the premises for one
year, according to the agreement, and at the expiration of the year,
to wit, on the 2d day of April, 1823, he went to the house of Wil-
son for the purpose of paying him."

3. The possession of the farm should have been at the same
time delivered by Wilson to Hillyer.

4. The defendants are entitled to a release from Hillyer and
wife, of her right of dower in the farm. Daniel W. Disborough
testifies that one of the terms of the agreement was a relinquish-
ment of the right of dower of the wife of Wilson. The other wit-
nesses do not, it is true, mention this matter ; but they do not deny
it, nor do they say any thing inconsistent with it : I deem it, there-
fore, sufficiently proved by the direct and uncontradicted testimony
of one respectable witness. This point is also in some measure
strengthened by the fact, that, according to the article of agreement,
the wife of Hillyer, as well as himself, was to execute a release to
Egbert.

10

5. Inasmuch as acts should have been done in April, 1823, by both parties to the agreement, which yet remain undone; and as Wilson has since been in the receipt of the rents, issues, and profits, the amount of which, though not accurately ascertained by the testimony, is fully shown to exceed the annual interest on the sum of one thousand dollars, an account should, in my opinion, be taken of the amount due to Wilson; charging on the one hand, the one thousand dollars with interest from the 2d day of April, 1823, and allowing on the other hand, the just annual value of the farm, from the same time.

I do, therefore, respectfully recommend to his excellency the Chancellor, that a decree be made to carry into effect these principles, with a reference to a master to take and report the account above mentioned, and that the question of costs be reserved until the final decree. CHARLES EWING.